Lynda L. CHOATE, Plaintiff-Appellant,

v.

CATERPILLAR TRACTOR COMPANY, Defendant-Appellee.

No. 16700.

United States Court of Appeals Seventh Circuit.

Oct. 17, 1968.

9. See United States v. Bitter (7th Cir. 1967), 374 F.2d 744, 748, rev'd on other points, 389 U.S. 15, 88 S.Ct. 6, 19 L.Ed. 2d 15.

James L. Hafele, Peoria, Ill., for plaintiff-appellant.

Homer W. Keller, Peoria, Ill., for defendant-appellee; Miller, Westervelt & Johnson, Peoria, Ill., of counsel.

Before MAJOR, Senior Circuit Judge, and SWYGERT and FAIRCHILD, Circuit Judges.

SWYGERT, Circuit Judge.

In this appeal we are asked to interpret section 706 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, which relates to the enforcement of the equal employment opportunities provisions of Title VII of the Act.[1]

Plaintiff, Lynda L. Choate, appeals from an order of the district court dismissing her claim for relief based on an alleged unlawful employment practice within the meaning of section 703(a)(1) of the Act, 42 U.S.C. § 2000e-2(a)(1).[2]

In her complaint, the plaintiff in substance alleged that on February 22, 1966 she applied to the defendant, Caterpillar Tractor Company, for factory work and was told that "she would not be given a job for the reason that as long as men were available for beginning factory jobs, men would be hired to the exclusion of women;" that about March 14, 1966 she filed a "written complaint with the Equal Employment Opportunity Commission, in Washington, D. C.;" and that on October 5, 1966 the Commission wrote her that "there was reasonable cause to believe that a violation [of the Act] had occurred." The plaintiff further alleged that, in compliance with the statute, she filed her complaint in the district court within

---

1. 42 U.S.C. § 2000e-5 reads in part:

(a) Whenever it is charged in writing under oath by a person claiming to be aggrieved * * * that an employer * * * has engaged in an unlawful employment practice, the Commission shall furnish such employer * * * with a copy of such charge and shall make an investigation of such charge. * * * If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion. * * *

* * * * *

(d) A charge under subsection (a) of this section shall be filed within ninety days after the alleged unlawful employment practice occurred. * * *

* * * * *

(e) If within thirty days after a charge is filed with the Commission * * * (except that * * * such period may be extended to not more than sixty days upon a determination by the Commission that further efforts to secure voluntary compliance are warranted), the Commission has been unable to obtain voluntary compliance with this subchapter, the Commission shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought against the respondent named in the charge (1) by the person claiming to be aggrieved. * * *

* * * * *

(f) Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter.

* * * * *

2. 42 U.S.C. § 2000e-2(a) reads:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

thirty days "after having been notified of her right to do so by the \* \* \* Commission;" that she had been discriminated against and denied employment as a result of her sex in violation of the provisions of 42 U.S.C. § 2000e–2(a) (1); and that her prospective employer intentionally engaged in an unlawful employment practice within the meaning of the Act. The plaintiff requested that Caterpillar be enjoined from engaging in such unlawful employment practices, that it be ordered to hire her with back pay, and that she be awarded a reasonable attorney's fee.

The defendant moved to dismiss the complaint because it failed to state a claim upon which relief could be granted. Specifically, the motion challenged the sufficiency of the complaint on the grounds, among others, that there were no allegations that the charge filed with the Commission was "under oath" as required by section 706(a) of the Act or that the plaintiff received from the Commission notice as prescribed in section 706(e) that it had been "unable to obtain voluntary compliance" by Caterpillar, and that, in any event, the action was barred by reason of the time limitations contained in the statute.

The district court granted the motion to dismiss, holding that "resort to the remedy of conciliation is a jurisdictional prerequisite to the right to file a civil action" and that "the filing of a verified charge with the Commission is necessary to invoke the statutory enforcement procedures." After reaching that determination, the court did not rule upon the other contentions made by the defendant with respect to the sufficiency of the complaint.[3]

Subsequent to the court's ruling, the plaintiff moved for leave to file an amended complaint for the purpose of eliminating the defects raised by the motions to dismiss. The tendered amended complaint alleged that about June 27, 1966 the plaintiff was contacted by the Commission at which time she "swore under oath that the contents of her complaint filed on March 14, 1966 were true." The district court denied leave to file the amended complaint, stating that the allegations of the proposed amendment "now \* \* \* make clear that the alleged violation was not 'charged in writing under oath' \* \* \* as specifically required by statute."

■ We are of the view that the district court was in error in holding that its jurisdiction to entertain the suit depended upon whether the charge of discrimination filed with the Commission was under oath. Basic to our view is the fact that the "under oath" requirement relates to the administrative procedures which are conducted by the Commission and which precede any court action. The statute gives the Commission no enforcement powers through the adjudicatory process. It allows the Commission only to investigate charges and attempt to gain compliance by informal methods of conference, conciliation, and persuasion. Enforcement of the rights of aggrieved parties resides exclusively in the federal courts. When the statute is thus considered, it is clear that the requirement for verification of charges lodged with the Commission relates solely to the administrative rather than to the judicial features of the statute. We believe that the provision is directory and technical rather than mandatory and substantive.

■ The requirement that a complainant must invoke the administrative process within the time limitations set forth in section 706(d) is a jurisdictional precondition to the commencement of a court action. A close reading of the statute indicates that there are only two additional jurisdictional prerequisites for such commencement: first, a notification to the aggrieved party by the Commission that it has been unable to obtain voluntary compliance and, second, the action must be filed within thirty days after the notification.

3. The district court's opinion appears at 274 F.Supp. 776 (S.D.Ill.1967).

■ Given the fact that the administrative remedy alone may be insufficient to vindicate the rights of aggrieved parties, we believe that it would be unnecessarily harsh and in derogation of the interests of those whom the Act was designed to protect to interpret the statutory language as denying substantive rights in the district court because of procedural defects before the Commission. If the Commission undertakes to process a charge which is not "under oath," we perceive no reason why the district court should not treat the omission of the oath as a permissive waiver by the Commission. To deny relief under these circumstances would be a meaningless triumph of form over substance.[4]

Our holding is further supported by the Commission's present regulation which allows aggrieved parties to amend their complaints "to cure technical defects or omissions, including failure to swear to the charge * * *" 29 C.F.R. § 1601.11 (1968). Despite the fact that it was adopted by the Commission after the filing of the instant charge, the regulation nonetheless manifests the Commission's position with regard to the "under oath" requirement. Thus the Commission, by virtue of its rulemaking power, has determined (under facts similar to those in the case at bar) that it will not refuse to accept a charge merely because of a technical defect and that such defect may be corrected by amendment which relates back to the original filing date. It follows that the Commission does not consider the absence of an oath as constituting a jurisdictional defect depriving it of the power to act.

An additional comment is in order. It is difficult to imagine how the absence of an oath at the time the original charge was filed could have injured Caterpillar. If plaintiff's charge had been frivolous, it is unlikely that the Commission would have found reasonable cause to believe a violation had occurred. Since Caterpillar could not have been harmed by the omission under these circumstances, it has little cause to complain.

Caterpillar maintains that plaintiff's action was properly dismissed for the additional reason that she failed to allege in her complaint compliance by the Commission with its duty of seeking conciliation between the parties. Such action by the Commission, it is argued, is a jurisdictional prerequisite to the right to institute a civil suit under the Act. Caterpillar contends that more than the mere opportunity for the Commission to seek compliance must be alleged by the complainant, that is, the complainant must aver that the Commission has endeavored to eliminate the alleged unlawful employment practice by "conference, conciliation, or persuasion" as required by the Act.

To support the proposition that conciliation efforts by the Commission are a jurisdictional prerequisite to court action, Caterpillar relies upon Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4th Cir.), cert. denied, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967).[5] This reliance is misplaced. If

---

4. The realities of the situation dictate such a holding. Another court has observed that:

> [T]he average complainant is not initially represented by counsel, has no knowledge of the niceties of the statute, and generally makes his 'charge' in a crude homemade fashion. As in the case of prisoner's petitions, the courts should not be overly technical or strict as to form in such instances. To carry the present argument to the extreme, would deny the Commission the power to process or investigate the complaint at all such circumstances.

Georgia Power Co. v. E.E.O.C., CCH Employment Practices Guide ¶ 9149, at 6570 (N.D.Ga. Aug. 9, 1968).

5. Caterpillar also relies on Dent v. St. Louis-San Francisco Ry. Co., 265 F. Supp. 56 (N.D.Ala.1967). The ruling in the *Dent* case was specifically disapproved in Moody v. Albemarle Paper Co., 271 F.Supp. 27 (E.D.N.C.1967), in Quarles v. Phillip Morris, Inc., 271 F. Supp. 842 (E.D.Va.1967), and was disapproved by implication in Evenson v. Northwest Airlines, Inc., 268 F.Supp. 29 (E.D.Va.1967).

anything, that case supports the converse proposition. In the course of affirming the district court's dismissal of a complaint where no charge had previously been filed against the employer, the Fourth Circuit said that a civil action would lie "only after conciliation efforts had failed, or, in any event, *after opportunity had been afforded the Commission to make such efforts.*" (Emphasis added.) 377 F.2d at 241.

■ In the present case, although the complainant makes no allegation concerning the conciliation efforts of the Commission, it is clear from the face of the complaint that the Commission had the opportunity to investigate and conciliate, in that the Commission could have investigated and attempted to conciliate, between the filing of the charge on March 14, 1966 and the issuance of its October 5, 1966 letter stating that it had reasonable cause to believe that a violation had occurred.

We believe that these allegations are sufficient to state a claim under section 706. A complainant may have no knowledge when he receives the required notification of what conciliation efforts have been exerted by the Commission. And more importantly, even if no efforts were made at all, the complainant should not be made the innocent victim of a dereliction of statutory duty on the part of the Commission.[6]

Caterpillar makes the additional argument that the suit was properly dismissed because the action was barred for failure to adhere to the time limitations prescribed by the Act. The alleged unlawful employment practice occurred on February 22, 1966. The

civil action was filed on November 3, 1966—254 days after the alleged act of discrimination. Caterpillar points to the time provisions in the Act, ninety days to file a charge of unlawful discrimination, sixty days for the Commission to effectuate voluntary compliance, and thirty days to file suit after notification from the Commission—a total of 180 days. Under this reading of the statute, Caterpillar maintains that the plaintiff did not bring her action within time because the suit was filed seventy-four days beyond the 180 days "specified" by the Act.

■ The defendant is mistaken, however, in its interpretation of the statute. Although certain time limits affirmatively appear in the Act, e. g., ninety days to file the charge, sixty days for the Commission to attempt voluntary compliance, and thirty days to file suit after notice from the Commission, the time period within which the Commission must notify the complainant after its attempt to obtain a voluntary compliance is nowhere prescribed. Consequently, the statute contains no definite overall time limitation which could bar the instant suit.

Moreover, a complainant has no control over the speed of the Commission's attempt to effect voluntary compliance or of its promptness in sending the required notification after such undertaking has failed. Consequently we believe that a complainant should not be made to suffer innocently for administrative delays for which he is not responsible.

The order of the district court dismissing the action is reversed.

6. Another court voiced a similar observation:
But 42 U.S.C.A. § 2000e–5(e) sets out only two requirements for an aggrieved party before he can sue: (1) he must file a charge with the E.E.O.C., and (2) he must receive the statutory notice from the E.E.O.C. that it has been unable to obtain voluntary compliance. There is nothing more that a person can do, and this Court will not ask that

he be responsible for the Commission's failure to conciliate, as that body's inaction is beyond the control of the charging party. To bar a party from bringing a suit because the E.E.O.C. has shirked its statutory responsibility would indeed be to provide a hollow remedy and to inflict an undeserved penalty upon an innocent person. Mondy v. Crown Zellerbach Corp., 271 F. Supp. 258 (E.D.La.1967).